**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| MATTHEW SMITH | ) | CASE NO. |
| | ) | |
| Plaintiff, | ) | JUDGE |
| vs. | ) | |
| | ) | |
| SANDUSKY NEWSPAPERS, INC., et al. | ) | **MOTION FOR PRELIMINARY INJUNCTION,** |
| | ) | |
| Defendants | ) | |

Pursuant to Rule 65 of the Federal Rules of Civil Procedure and Ohio Revised Code § 2741.07, Plaintiff Matthew Smith respectfully moves the Court to issue a Preliminary Injunction enjoining Defendant Sandusky Newspapers, Inc. as follows:

1) Enjoining Defendant Sandusky Newspapers, Inc. continued electronic publication of the June 15, 2016 article entitled "Man steals 22k from Sandusky rental business" and subsequently retitled as "Shiloh man charged for $22K theft."; and

2) Enjoining Defendant Sandusky Newspapers, Inc.'s continued misappropriation of Plaintiff's likeness for commercial purposes by offering for sale reproductions of his photograph appearing on the Sandusky Register website for display on merchandise sold through the Sandusky Register website pursuant to R.C. § 2741.07.

**MEMORANDUM IN SUPPORT**

The relief sought in this motion pertains to claims pled against Sandusky Newspapers, Inc., reporter Courtney Astolfi and editor Matt Westerhold (collectively the "Register Defendants") arising from a June 15, 2016 Sandusky Register newspaper article headlined "Man steals 22k from Sandusky rental business." The article, authored by Courtney Astolfi, appeared on the front page of the Sandusky Register newspaper and featured Plaintiff's "mugshot" picture and name. The article also contained defamatory quotes from Sandusky Police Detective John

Powell claiming that Plaintiff, a manager for a local property rental business (Davis & Pinchot Investments hereafter referred to as "DPI"), duped two unwitting tenants into cashing DPI checks as part of a scheme to steal $22,000.00 from the company. The theft charges were dismissed by the City prosecutor on August 15, 2016.

On August 31, 2016 following the dismissal of the theft charges, Jared Davis from DPI contacted the article's author, Courtney Astolfi, requesting that the June 15, 2016 article be redacted because it was untrue and harming Plaintiff and DPI's reputation in the local community. On September 2, 2016 Astolfi responded and acknowledged that she was aware of the dismissal and would update the story to reflect that the charges were dismissed.

In the meantime, the website version of the article received a high volume of comments that were critical of the article. Later, those negative comments were deleted from the website and the internet article's headline was changed to "Shiloh man charged for $22K theft." Courtney Astolfi, editor Matt Westerhold and the Sandusky Register did not retract or update the article as promised by Astolfi in her September 2, 2016 email.

On December 17, 2016 Davis followed up with Astolfi to inquire into why the article was never updated as promised, but received no response from Astolfi. Davis also copied editor Matt Westerhold on his communications to Astolfi but received no response from him either. The misleading and libelous article remains available for viewing online as of the time of this filing.

Plaintiff later discovered that the Sandusky Register was offering reproductions of his likeness for sale on coffee mugs, pins, keychains and other merchandise sold through the Sandusky Register's website without his consent.

**LAW & ARGUMENT**

**A.**     **Standard of Review**

When considering a motion for a preliminary injunction, courts address the following factors: (1) whether the party seeking the order has shown a substantial likelihood of success; (2) whether the party seeking the order will suffer irreparable harm absent the injunction; (3) whether the order will cause others to suffer substantial harm; and (4) whether the public interest would be served by injunctive relief. *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir. 1996), cert. denied, 519 U.S. 807, 117 S.Ct. 49 (1996) (No. 95-1674), 64 U.S.L.W. 3795 (U.S. May 17, 1996) (No. 95-1884); *Forry, Inc. v. Neundorfer, Inc.*, 837 F.2d 259, 262 (6th Cir. 1988); *North Avondale Neighborhood Ass'n v. Cincinnati Metro. Hous. Auth.*, 464 F.2d 486, 488 (6th Cir. 1972); *Reynolds v. International Amateur Athletic Fed'n*, 841 F. Supp. 1444, 1454 (S.D. Ohio 1992); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Kramer*, 816 F. Supp. 1242, 1246 (N.D. Ohio, E.D. 1992). No single factor is dispositive; rather, the court should balance the elements collectively. *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985); *Frisch's Restaurant, Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *Midmark Corp. v. Janak Healthcare Private, Ltd.*, 2014 U.S. Dist. LEXIS 52652 (S.D. Ohio Apr. 16, 2014).

**B.** **Plaintiff Meets Each Factor**

    1.    Likelihood of success on the merits.

Plaintiff's request for injunctive relief is supported by firmly established Ohio common-law principles governing libelous newspaper publications as well as statutory duties imposed upon the media by Ohio Revised Code § 2739.14.

    a.    The June 15, 2016 Article is libelous *per se.*

The June 15, 2016 Article written by Courtney Astolfi and published in the Sandusky Register is libelous *per se* because 1) the headline unambiguously accuses Plaintiff of stealing $22,000.00 from his employer; and 2) contains statements made by Sandusky Police Detective

John Powell during an interview by Cortney Astolfi accusing stating that Plaintiff duped two unwitting tenants into cashing DPI checks as part of a scheme to steal $22,000.00 from the company.

There are two kinds of defamation and, therefore, two kinds of libel. Defamation per se occurs when material is defamatory on its face; defamation per quod occurs when material is defamatory through interpretation or innuendo. *Godsen v. Louis* (1996) 116 Ohio App.3d 195, 207 (citing *Becker v. Toulmin* (1956), 165 Ohio St. 549, 556).

Written matter is libelous per se if, on its face, it reflects upon a person's character in a manner that will cause him to be ridiculed, hated, or held in contempt, or in a manner that will injure him in his trade or profession. *Becker* at 533; *Westropp v. E.W. Scripps Co.* (1947), 148 Ohio St. 365, 373-374; Cleveland Leader Printing Co. v. Nethersole (1911), 84 Ohio St. 118. When a writing is not ambiguous, the question of whether it is libelous *per se* is for the court. *Becker* at 549, 555. **A writing that accuses a person of committing a crime is libelous *per se*.** *Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Servs., Inc*. (1992) 81 Ohio App.3d 591, 601; see, also, *State v. Smily* (1881), 37 Ohio St. 30, 32-33.

Where a plaintiff proves that a publication contains statements accusing them of committing a crime, and where the defendants were at least negligent in publishing the defamatory statements, a jury must presume that the plaintiff suffered damages caused by publication. *Gosden* at 211, citing *Moore v. P.W. Publishing Co.* (1965), 3 Ohio St.2d 183, 188.

Here, it is indisputable that the Sandusky Register published, and continues to publish, the June 15, 2016 article that through its headline and statements made by Detective Powell, that unambiguously accuses Plaintiff of stealing $22,000.00 from his employer. Furthermore, the article constitutes libel *per se* because it unambiguously accuses Plaintiff of committing a crime.

Finally, it is highly likely that Plaintiff will succeed in proving that the Register Defendants were at least negligent in publishing (and continuing to publish) the libelous article because their actions were willful insofar as 1) the article is defamatory on its face; and 2) they refused to update or retract the article even after receiving actual notice of its falsity.

    b.    <u>The Register Defendants are statutorily obligated to redact and/or update the June 15, 2016 article.</u>

Plaintiff will also prevail on his claims asserted pursuant to R.C. § 2739.14 because the Register Defendants refuse to redact and/or update the June 15, 2016 article despite being made aware of the article's falsity and being specifically asked to redact or update the article. R.C. § 2739.14 provides:

> **2739.14 Publishing corrected statements.**
>
> Whenever demand has been made for the publication of statements or articles under section 2739.13 of the Revised Code, the newspaper company shall print and circulate the same in the next regular issue or within forty-eight hours following the receipt of such statement or article. Such statement or article shall be phrased in proper language and be printed without any additions to, or omissions therefrom, in the same color of ink, from like type, with headlines of equal prominence, occupying a like space in the same portion of the newspaper as was used in printing the original article complained of, and shall be given the same publicity in all respects and, as nearly as possible, the same circulation as such original article. Such company shall print and publish such statements or articles without cost to such persons or their representatives; and such publication may be proved at the trial of a suit for damages as a mitigating circumstance to reduce damages, provided that any voluntary publication made without demand may be used to rebut any presumption of malice or injury on the part of such company growing out of the original publication to which the same related. This section does not prevent the injured party from alleging and proving actual malice on the part of the publisher and any special damages resulting to him therefrom.

Here, demand was made on Plaintiff's behalf by Jared Davis via email on August 31, 2016:

> Courtney,
>
> I wanted to reach out to you regarding the below story you published a few months back.

http://www.sanduskyregister.com/Law-Enforcement/2016/06/15/Man-steals-22K-from-Sandusky-rental-business

As a partner in Davis & Pinchot Investments and as Matt Smith's employer for 8+ years, we posted the bail for him when this happened knowing he had absolutely nothing to do with the theft. He was of course completely cleared of all charges at an initial cursory court hearing. The gentleman who stole the money never returned to work after the ruse was uncovered and subsequently moved out of state and for inexplicable reasons has not yet been charged. The police department despite having direct photo evidence of this fellow stealing the funds at the bank, choose to implicate the man who uncovered the thefts (Mr Smith) for reasons that defy any shred of logic.

For Mr Smith, a maintenance man who fosters children, shows up for work every day at 7 am and who has handled 100's of thousands of dollars in rent payments without a dollar going missing and who makes real contributions to the Sandusky community, the first thing that comes up connected to his name in a google search is not "Man accused and then cleared of stealing money from his employer", it's "Man steals 22k from Sandusky Rental business".

I would like to see either a retraction or a subsequent story that Mr Smith was cleared of all charges connected to the case. I am sure you can imagine the position this article has put Mr. Smith in. I have over 100 tenants in the Sandusky area, would you want this man coming into your home to fix a toilet, repair your drywall or deliver a new appliance if you had read this article? It seems to be a very sensationalist manner in which to get clicks that has resulted in a severe dent to an innocent mans reputation and ability to effectively do his job.

Please reconsider allowing this story to remain up.

Respectfully,

Jared Davis

President

August 31, 2017 email from Jared Davis to Courtney Astolfi (Exhibit 1)

Astolfi responded to Mr. Davis's email, indicating that she was aware that the charges had been dismissed and agreed to update the article accordingly:

Hi there Mr. Davis,

It's my understanding this case was dismissed without prejudice at the municipal

court level, but that the case is still ongoing and further action is likely forthcoming.

I can include an update in the story that says as much. (And we will likely update it again if/when the charges are refiled.)

Thanks for reaching out. I'll update the story later today.

Courtney

Email from Courtney Astolfi to Jared Davis (Exhibit 2)

Despite her agreement to update June 15, 2016 article so as to accurately reflect the disposition of Plaintiff's theft charges, no update was made. The title of the article was, however, changed from "Man steals 22k from Sandusky rental business" to "Shiloh man charged for $22K theft"[1]. Aside from editing the headline, the content of the article remains unchanged, including the Plaintiff's mugshot posted conspicuously at the top of the article. Moreover, a Google search of "Matthew Smith Sandusky Register" returns the original title of the article on the front page of its results (Exhibit 3).[2] More troubling is that the originally headlined article is still publicly available on a parallel website maintained by the Sandusky Register.[3]

Jared Davis even sent Astolfi a follow-up email on December 17, 2016 asking why the story had never been updated as promised, but Astolfi did not respond. (Exhibit 4) The Register Defendants' willful refusal to update the internet article is a willful violation of R.C. § 2739.14. Plaintiff's success in proving that claim in this case is not simply likely, it is all but certain.

---

[1] http://www.sanduskyregister.com/story/201606150039

[2] https://www.google.com/search?q=MAtthew+Smith+Samdusky&oq=MAtthew+Smith+Samdusky&aqs=chrome..69i57.4120j0j7&sourceid=chrome&ie=UTF-8#q=Matthew+Smith+Sandusky+Register

[3] http://srweb.libercus.net/Law-Enforcement/2016/06/15/Man-steals-22K-from-Sandusky-rental-business

Based upon the foregoing, Plaintiff has met his burden of demonstrating a likelihood of his success on the merits as required under a Rule 65 analysis.

    c.    <u>Defendant Sandusky Newspapers, Inc. has infringed upon Plaintiff's right to publicity in violation of R.C. § 2741.02</u>

There is no factual dispute that Plaintiff's likeness was made available for reproduction on coffee mugs, buttons, keychains and other merchandise and offered for sale on the Sandusky Register's website. There is no genuine factual dispute that Plaintoiff di dnot authorize the Sandusky Register to use his likeness for any purpose, commercial or otherwise. Thus Defendant Sandusky Newspapers, Inc.'s conduct violates R.C. § 2741.02, which provides, in relevant part:

**2741.02 Using individual's persona for commercial purpose without authorization.**

(A) Except as otherwise provided in this section, a person shall not use any aspect of an individual's persona for a commercial purpose :

(1) During the individual's lifetime ;

Further, R.C. § 2741.06 expressly provides a cause of action for violation of R.C. § 2741.06:

**2741.06 Civil action to enforce publicity right.**

(A) The following persons may bring a civil action to enforce the rights set forth in this chapter:

(1) A person or persons, including an individual whose right of publicity is at issue, who collectively own all of an individual's right of publicity, subject to any licenses regarding that right of publicity;

Finally, the statute expressly provides for injunctive relief where a person's likeness is misappropriated for commercial purposes in violation of R.C. §2741.02:

**2741.07 Damages in civil action to enforce publicity right.**

> \* \* \*
>
> (D) A court in which an action under this section is brought may do any of the following:
>
> (1) Award the prevailing party reasonable attorney's fees, court costs, and reasonable expenses associated with the civil action;
>
> (2) Award treble damages against a party identified in division (E) of section 2741.02 of the Revised Code who has knowledge of the unauthorized use of the persona as prohibited by section 2741.02 of the Revised Code;
>
> **(3) Order temporary or permanent injunctive relief;**

Based upon the foegoing, there is no question that Plaintiff will prevail on the merits of his R.C. § 2741.02 claims.  Accordingly, injuncitrve relief is wholly appropriate because it is expressly authorized by statute and thus not subject to further Rule 65 analysis.

    2.    <u>Plaintiff will suffer irreparable harm if an injunction is not granted.</u>

Plaintiff must show that "he is likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20. In *Winter*, the Supreme Court clarified that, even where a plaintiff demonstrates a strong likelihood of prevailing on the merits, the plaintiff must do more than show a "possibility" of irreparable harm; rather, the proper standard "requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Id.* at 22.

In seeking an injunction, a party must make a clear showing of a significant threat that irreparable injury will result if relief is not granted, and that no other adequate legal remedy is available. *City of Parma v. Levi*, 536 F.2d 133, 135 (6th Cir.1976). Matters concerning reputation can constitute irreparable harm for which there is no adequate remedy at law. *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156-57 (10th Cir. 2001); see also *Warren Fischer Dev. Co. v. Union Tp.* (May 1, 2000), Clermont App. No. CA99-

10-100 at 13, citing *Robert W. Clark, M.D., Inc. v. Mt. Carmel Health* (1997), 124 Ohio App.3d 308.

In the case at bar, the irreparable harm is self-evident. Plaintiff's name and photograph were plastered on the front page of the largest newspaper in Erie County, Ohio and the only newspaper in Sandusky Ohio under the headline "Man steals 22k from Sandusky rental business." Additionally, the defamatory article echoes in eternity on websites owned or controlled by Sandusky Newspapers, Inc. No amount of money can "un-ring" the bell, and absent an order requiring retraction and//or correction of the article, Plaintiff is without a complete and adequate remedy.

Accordingly, Plaintiff has satisfied the "irreparable harm" element of a Rule 65 analysis.

3. <u>The balancing of equities favors injunction.</u>

The equities in this case strongly favor an injunction because Plaintiff is requesting that the Register Defendants be compelled to do what is already expressly required under R.C. § 2739.14 – retract or correct the defamatory article. More importantly, from an equity standpoint, Plaintiff is seeking to compel Defendants to do what they already promised they would do in the September 2, 2016 email from Courtney Astolfi to Jared Davis. There is no colorable argument that the Register is being deprived or harmed in any way should an injunction issue.

Accordingly, Plaintiff has satisfied the "balancing" element of a Rule 65 analysis.

4. <u>The public interest as manifest in R.C. § 2739.14 is served by an injunction.</u>

The public policy as manifest in R.C. § 2739.14 is to discourage the publication of defamatory material by the media and to coerce the redaction or correction of any defamatory material so published. Importantly, in enacting the law, the General Assembly expressly contemplated that it should operate in conjunction with civil defamation suits such as this case:

> Such company shall print and publish such statements or articles without cost to such persons or their representatives; and such publication may be proved at the trial of a suit for damages as a mitigating circumstance to reduce damages, provided that any voluntary publication made without demand may be used to rebut any presumption of malice or injury on the part of such company growing out of the original publication to which the same related. This section does not prevent the injured party from alleging and proving actual malice on the part of the publisher and any special damages resulting to him therefrom.

R.C. § 2739.14

Thus, the General Assembly is expressly encouraging media to police themselves by providing a statutory affirmative defense to a libel suit. Further, the General Assembly is expressly stating that the statute *does not* bar a party from alleging and proving malice in such a civil defamation suit. In other words, the General Assembly is instructing the courts that compliance with the statute, while not dispositive, is relevant and should be considered by the trier of fact.

Based upon the foregoing, the public policy absolutely favors voluntary eradication of defamatory material in the media. It logically follows that compulsory eradication of defamatory material where the responsible media outlet fails to take corrective action on its own or pursuant to request furthers that public policy.

Accordingly, Plaintiff has satisfied the public policy element of a Rule 65 analysis.

## CONCLUSION

All of the relevant factors weigh in favor of issuing a preliminary injunction against the Register Defendants requiring them to immediately retract the June 15, 2016 article from all publication sources under its control and to cease using his likeness for commercial purposes.

                                                                                  Respectfully submitted,

                                                                                   JOHN W. GOLD, LLC

*/s/ John W. Gold*

_____

**JOHN W. GOLD (#0078414)**
P.O. Box 804
Brunswick, OH 44212
Tel: (216) 777-1488
Fax: (419) 593-4441
Email: jgold@jwg-law.com
*Attorney for Plaintiff Matthew Smith*

## **CERTIFICATE OF SERVICE**

On June 1, 2017 a copy of this document and the Verified Complaint was served via email upon the following:

Justin Harris, Esq.
City of Sandusky Law Director
jharris@ci.sandusky.oh.us

Matt Westerhold
Editor, Sandusky Register
mattwesterhold@sanduskyregister.com

Courtney Astolfi
courtneyastolfi@sanduskyregister.com


*/s/ John W. Gold*

_____
JOHN W. GOLD (#0078414)
*Attorney for Plaintiff Matthew Smith*