In the United States District Court
Northern District of Ohio
Western Division – Case No. 3:17-cv-1135

MATTHEW W. SMITH

Plaintiff,

-v-

SANDUSKY NEWSPAPERS, INC., *et. al.,*

Defendants.

_____

**Memorandum of Sandusky Newspapers, Inc. opposing Plaintiff Smith's**
***amended* motion for preliminary injunction**
_____

John W. Gold (0078414)
JOHN W. GOLD, LLC
P.O. Box 804
Brunswick, OH  44212
E:  jgold@jwg-law.com

Attorney for Plaintiff

David Marburger (0025747)
MARBURGER LAW LLC
14700 Detroit Avenue, Suite One
Cleveland, OH  44107
T:  216.930.0500
E:  david@marburger-law.com

Attorney for Defendants

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS ............................................................. i-ii

Preliminary Statement ............................................................. 1

Statement of Facts ............................................................. 2

1.  The plaintiff and the movants.................................................. 2

2.  The article at issue—June, 2016 ............................................. 2

3.  The "libercus" URL for a digital version of the contested article ................... 3

4.  Demand for retraction—Aug. 31, 2016.................................... 4

5.  Alleged commercial misappropriation of Mathew Smith's photo
    on the Register's website.................................................. 5

6.  The only relief remaining upon which Smith bases his motion for
    preliminary injunction ............................................... 5

Argument ............................................................. 6

1.  This Court should deny Smith's demand for a preliminary injunction
    to compel the Register to disable the public's ability to see the
    contested article on the Register's website .................................. 6

    A.   A litigant seeking to enjoin a newspaper from making its
         information available to the public seeks a "prior restraint,"
         and must satisfy an extraordinary burden .......................... 6

    B.   The First Amendment imposes the same heavy burden where
         the demanded restraint is temporary, such as a preliminary
         injunction ...................................................... 7

    C.   Smith has failed to satisfy his extraordinary burden to justify
         the prior restraint that he demands ............................... 9

<u>Page</u>

2.  This Court should deny Smith's demand that the Register publish
a retraction or correction under Ohio's so-called "retraction"
statutes because Smith has never complied with those states ......................... 12

    A.    Smith relies on one of Ohio's so-called "retraction" statutes to
justify an order compelling the Register to publish a retraction
or correction ................................................................................. 12

    B.    Ohio's "retraction" statutes impose no duty upon newspapers
where the aggrieved person has not proffered a sworn state-
ment comprising the words that the newspaper is supposed
to publish ...................................................................................... 13

    C.    Neither Smith nor Jared Davis has supplied a sworn statement
to the newspaper ........................................................................... 13

3.  This Court should deny Smith's motion to compel the Register to
publish a retraction or correction on the separate and independent
ground that Smith hasn't satisfied the heavy burden that the First
Amendment imposes ................................................................................. 14

    A.  The First Amendment imposes a heavy burden upon those who
seek to compel the press and the public to make statements
about matters of public concern with which they may not agree ............... 14

    B.  Smith has not satisfied his heavy burden to justify a court order
compelling the Register to publish a retraction or correction ..................... 17

Conclusion ....................................................................................................... 18

CERTIFICATE OF SERVICE ........................................................................... 20

**Preliminary statement**

About one year after the defendant newspaper—The Sandusky Register—published a news report about his arrest, libel plaintiff Matthew Smith moves this Court to issue two extraordinary preliminary injunctions. First, he moves the Court to order the newspaper to block public access to the year-old news report, which a search can retrieve on the paper's website. Second, he moves the Court to compel the newspaper to publish a retraction or correction.

This libel suit has just begun. No final nonappealable order exists adjudicating that the newspaper has committed libel. Smith has cited no precedent for a court order compelling a news organization to remove a claimed libelous article from its website pending the outcome of a libel suit.

Similarly, Smith has cited no precedent for a court order compelling a news organization to publish a retraction or correction. Even decades before the United States Supreme Court applied the First Amendment to state libel law, a libel plaintiff could not obtain a mandatory injunction to compel a newspaper to publish a retraction. E.g., Finish Temperance Soc'ty v. Riavaaja Pub. Co., 219 Mass. 28, 106 N.E. 561 (1914).

The First Amendment renders both kinds of orders presumptively invalid. The burden on Smith to justify either order is extraordinary. This Court should rule that Smith has failed to overcome his very heavy burden.

**Statement of Facts**

**1.    The plaintiff and the movants.**

Plaintiff Matthew Smith's libel complaint advises that he is a "supervisor" for Davis & Pinchot Investments, Inc.[1]  A Davis & Pinchot email quoted in Smith's memorandum seeking a preliminary injunction says that Smith is "a maintenance man" who has "handled 100's of thousands of dollars" for the company.[2]  Smith is suing over a newspaper article published over a year ago that reported his arrest.

The movants are three defendants:  Sandusky Newspapers, Inc., Matthew Westerhold, and Courtney Astolfi. Sandusky Newspapers, Inc. ("the Register") publishes The Sandusky Register, a daily print newspaper circulated primarily in Sandusky, Ohio, and Erie County, Ohio. Sandusky Newspapers, Inc. also publishes a website, which functions as an online version of the print newspaper: www.sanduskyregister.com.[3]

Westerhold is the managing editor for the newspaper and the website.[4] Courtney Astolfi is the Register reporter who wrote the article upon which Smith sues these movants for libel.

**2.    The article at issue—June, 2016.**

About one year ago, the Register reported in its print newspaper that Sandusky police had arrested Smith. The article was on page 2 of the print newspaper circulated on

---

[1]    Complaint ¶ 3, doc # 1.

[2]    Memor. re amended mot. for prelim. inj. at p. 6, doc # 6.

[3]    Westerhold decl. ¶ 2, a copy accompanies this memor. as **Exhibit 1**.

[4]    Westerhold decl. ¶ 3, Exhibit 1.

Thursday, June 16.[5] The forthcoming hyperlink takes you to a copy of the print article, which appears after the certificate of service of this memorandum; a hyperlink there will return you to this page. Click while pressing CTRL:  Article 1.

Smith claims that the headline in the print article "Man steals $22K from rental business" libeled him, as did the substance of the article.[6] A digital version of the article is available on the Register's website, but with a different headline: "Shiloh man charged for $22K theft." That article is retrievable by searching for it on the website, or by using this web address:  http://www.sanduskyregister.com/story/201606150039.

**3.      The "libercus" URL for a digital version of the contested article.**

Smith's memoranda supporting his original and amended motions for preliminary injunction advise that a digital version of the article with the headline "Man steals $22K from Sandusky rental business" appears on "a parallel website maintained by the Sandusky Register."[7]

The Uniform Resource Locater (URL) that Smith cited for the "parallel website"is

http://srweb.libercus.net/Law-Enforcement/2016/06/15/Man-steals-22K-from-Sandusky-rental-business.

The Register has never held out the srweb.libercus.net URL as a web address for the public to use to visit the Sandusky Register website.[8] The Register used that URL to

---

5       Westerhold decl. ¶ 5, Exhibit 1.

6       Complaint ¶s 39, 43, doc. # 1.

7       Memor. re *amended* mot. for prelim. inj. at 7 & n.3, 1, doc # 6; memor. re mot. for prelim. inj. at 7 & n.3, doc # 2.

8       Booth decl. ¶s 8, 9, **Exhibit 2**.

aid in developing its website and to manage classified ads and some other non-journalistic content.[9] That isn't to say that no digital article with the headline "Man steals . . ." was on the Register's site. For purposes of this motion, only the Register does not contest that the digital article's headline originally had the "Man steals" headline, and changed it to "Shiloh man charged. . . ."

The declaration of the Register's Director of Digital Operations provides more detail than seems necessary here to explain the srweb.libercus.net URL. (Booth decl., Exhibit 2.)

**4. Demand for retraction—Aug. 31, 2016.**

In August 2016—about six weeks after the Register published the contested article and about two weeks after the City of Sandusky dismissed charges against Smith without prejudice—Jared Davis of Davis & Pinchot Investments LLC sent an email to defendant Courtney Astolfi, the Register reporter who wrote the article.[10]

His email said:  "I would like to see either a retraction or a subsequent story that Mr. Smith was cleared of all charges connected to the case," and he asked Astolfi to "reconsider allowing this story to remain up."[11]

---

[9]     Booth decl. ¶s 8, 9, Exhibit 2.

[10]     Complaint ¶s 46, 47; Memor. re amended mot. for prelim. inj. at 2, 5-6, doc. # 6.

[11]     Memor. re amended mot. for prelim. inj. at 6, doc. # 6.

Astolfi said that she would "update" the story.[12] Smith avers that the Register did not publish an updated article. For purposes of this motion, the Register does not contest that averment.

**5.      Alleged commercial misappropriation of Matthew Smith's photo on the Register's website.**

Counts 4 and 5 of Smith's complaint allege that the Register sold or tried to sell copies of the photo of Matthew Smith that accompanied the article.[13] That turned out to be mistaken because the Register has never sold or tried to sell that photo.[14]  Smith no longer seeks to enjoin the Register with respect to the photo.[15]

**6.      The only relief remaining upon which Smith bases his motion for preliminary injunction.**

Smith complains that Google's search results express the headline "Man steals $22K from Sandusky rental business" even though the search result linked to the article headlined "Shiloh man charged . . .." In response to Smith's claim, the Register has caused Google's search results to stop expressing the headline "Man steals."[16] The Register also has caused the srweb.libercus.net URL to link automatically and permanently to the digital article about Smith with the headline "Shiloh man charged for $22K theft."[17]

---

[12]      Memor. re amended mot. for prelim. inj. at 6, doc. # 6.

[13]      Complaint ¶s 71-77, doc. # 1.

[14]      Jillyann Burns decl., **Exhibit 6**.

[15]      *Compare* amended mot. for prelim. inj. at 1 (doc. #6) *with* mot. for prelim. inj. at 1 (doc. # 2).

[16]      Brent Booth decl., ¶s 20, 21, Exhibit 2.

[17]      Brent Booth decl., ¶ 19, Exhibit 2.

The only relief that Smith seeks in his amended motion for preliminary injunction that the Register hasn't already provided or resolved is for this Court to issue two mandatory injunctions. They would compel the Register:

- to remove the article "Shiloh Man charged for $22K theft" from public availability on its website;[18] and

- "to do what is already expressly required under R.C. 2739.14 [Ohio's retraction law]—retract or correct the defamatory article."[19]

For the reasons described in this memorandum, this Court should decline to grant those mandatory injunctions.

## Argument

**1.  This Court should deny Smith's demand for a preliminary injunction to compel the Register to disable the public's ability to see the contested article on the Register's website.**

### A.  A litigant seeking to enjoin a newspaper from making its information available to the public seeks a "prior restraint," and must satisfy an extraordinary burden.

A court order "preventing a news organization from publishing information in its possession on a matter of public concern" is one of a variety of official actions called "prior restraint." Procter & Gamble Co. v. Bankers Trust Co., 78 F.3d 219, 225 (6th Cir. 1996).

"The chief purpose" of the First Amendment is "to prevent previous restraint on publication." Near v. Minnesota, 283 U.S. 697, 713 (1931).

---

[18]     Memor. re amended mot. for prelim. inj. at 1 (doc. #6).

[19]     Memor. re amended mot. for prelim. inj. at 9 (doc. #6).

That makes prior restraints of speech and publication "the most serious and the least tolerable infringements on First Amendment rights." Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 559 (1976).

Enjoining publication, therefore, is "one of the most extraordinary remedies known to our jurisprudence." Nebraska Press Ass'n, 427 U.S. at 562.

A court order that bars the press from making its reports available to the public is presumptively unconstitutional. New York Times Co. v. United States, 403 U.S. 713, 714 (1971).

"The presumption against prior restraints is heavier—and the degree of protection broader—than that against limits imposed by criminal penalties." Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 558-559 (1975).

So a litigant seeking to enjoin the press "carries a heavy burden." New York Times Co., 403 U.S. at 714.

That litigant must establish "a need" to enjoin the press to "further a state interest of the highest order." Smith v. Daily Mail Pub. Co., 443 U.S. 97, 103 (1979).

The First Amendment "tolerates absolutely no prior judicial restraints of the press predicated upon surmise or conjecture that untoward consequences may result," and so, in "no event may mere conclusions be sufficient." New York Times Co., 403 U.S. at 725-726, 727 (Brennan, J., concurring); accord Nebraska Press Ass'n, 427 U.S. at 563, 568-569.

**B.  The First Amendment imposes the same heavy burden where the demanded restraint is temporary, such as a preliminary injunction.**

The heavy burden to justify enjoining the press is "not reduced by the temporary nature of a restraint." Nebraska Press Ass'n, 427 U.S. at 559.

"Temporary restraining orders" are a "classic" example of a prior restraint. Alexander v. United States, 509 U.S. 544, 550 (1993).

Each day that an order bars the press from making its reports available to the public can be "a separate and cognizable infringement of the First Amendment." CBS, Inc. v. Davis, 510 U.S. 1315, 1317 (1994) (Blackmun, as Circuit Justice staying preliminary injunction) (citation and quotation marks omitted).

Only "proof that publication must inevitably, directly, and immediately cause the occurrence of an event kindred to imperiling the safety of a transport already at sea can support even the issuance of an interim restraining order." New York Times Co., 403 U.S. at 726-727 (Brennan, J., concurring).

The Supreme Court invalidated a temporary injunction that barred the press from reporting that a defendant in a pending criminal prosecution had confessed to murder. The restraint violated the First Amendment even though it lasted only until a jury was selected. Nebraska Press Ass'n, 427 U.S. at 543.

The Supreme Court affirmed lower court rulings that denied the federal government's motions to enjoin The New York Times and The Washington Post from publishing the Pentagon Papers for the limited time needed to study and assess the impact on national security posed by publishing some of those papers. New York Times Co., 403 U.S. at 727 (Brennan, J., concurring); at 750 (Burger, C.J., dissenting); at 759 (Blackmun, J., dissenting).

8

**C.  Smith has failed to satisfy his extraordinary burden to justify the prior restraint that he demands.**

In moving this Court to compel the Register to make the year-old article unavailable to the public, Smith relies on his allegation that the article is libel *per se*. (Memor. re amended mot. for prelim. inj. at 4-5, doc # 6.)

Yet he cites no authority for ordering a newspaper to block an article from public view pending the outcome of a libel suit. Where a libel defendant has lost a libel suit on its merits, so that the defendant's liability has been fully adjudicated, some courts have allowed narrow injunctions against repeating the adjudicated libel. E.g, Lothschuetz v. Carpenter, 898 F.2d 1200, 1208-1208 (6th Cir. 1990) (Wellford, J., joined by Hull, J.)

Although the Register is convinced that Judge Wellford's analysis in Lothschuetz is incorrect, repeating a fully adjudicated libel is not the issue here. Smith seeks to enjoin a claimed libel before any court has rendered a final nonappealable judgment that the Register actually has committed libel.

The Supreme Court explained a pivotal reason why the First Amendment bars enjoining a claimed libel before the suit's final outcome. The Court said:

> [A] judgment in a defamation case is subject to a whole panoply of protections afforded by deferring the impact of the judgment until all avenues of appellate review have been exhausted.
>
> Only after judgment has become final, correct or otherwise, does the law's sanction become fully operative.
>
> A prior restraint, by contrast and by definition, has an immediate and irreversible sanction.

Nebraska Press Ass'n, 427 U.S. at 559.

Under Ohio law and the First Amendment, to establish the Register's liability on the merits of Smith's libel claim, this Court would have to adjudicate much more than whether the article's content qualifies as libel per se. The Court also would have to adjudicate:

   i. that whatever defenses the Register raises have failed; and

   ii. that the contested statements in the article are materially false;[20] and

   iii. that clear and convincing evidence established the Register's negligence in failing to discover the adjudicated falsity;[21] or

   iv. that clear and convincing established that the Register kept the article available on its website with constitutional actual malice, depending on whether the Court concluded that Smith was seeking only the presumed damages of libel per se, or established actual injury.[22]

Those adjudications haven't occurred here, and, of course, no appeal has been adjudicated.

Where a libel plaintiff alleged that the defendant was circulating emails that impersonated the plaintiff, saying in the plaintiff's impersonated voice that the plaintiff is a registered sex offender, the United States District Court for the Southern District of Ohio refused to grant a temporary injunction. <u>Alahverdian v. Nemelka</u>, No. 3:15-cv-060, 2015 WL 1276453 (S.D. Ohio 2015).

---

[20] *Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 776 (1986); *Masson v. New Yorker Magaz., Inc.,* 501 U.S. 496, 516-517, 524 (1991).

[21] *Lansdowne v. Beacon Jrnl Pub. Co.,* 32 Ohio St.3d 176, 180 (1987).

[22] *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 349 (1974).

The Alahverdian court emphasized that "the Sixth Circuit has never departed from the general rule prohibiting as unconstitutional prior restraints in the form of temporary restraining orders or preliminary injunctions absent extraordinary circumstances." Alahverdian, 2015 WL 1276453 at *2; accord Karhani v. Meijer, 270 F.Supp.2d 926, 930 n.4 (E.D. Mich. 2003) (alleged libel).

Indeed, damages are the appropriate remedy for libel, not an order enjoining the press. See Karhani, 270 F.Supp.2d at 930; McCarthy v. Fuller, 810 F.3d 456, 464 (7th Cir. 2015) (Sykes, J., concurring).

Justice Blackmun ordered a stay of a state court's order temporarily barring the broadcast of a CBS television report where the state court found that the broadcast potentially conveyed material falsehoods about a meat-packing company that could force "the plant's closure." Davis, 510 U.S. at 1316.

Justice Blackmun concluded:  "If CBS has breached its state law obligations, the First Amendment requires that Federal [the meat packing firm] remedy its harms through a damages proceeding rather than through suppression of protected speech." Davis, 510 U.S. at 1318.

 In demanding an order compelling the Register to block public access to the contested article until this suit is finally resolved, Smith has failed to surmount his extraordinary burden. This Court, therefore, should deny Smith's motion for preliminary injunction.

11

**2.      This Court should deny Smith's demand that the Register publish a retraction or correction under Ohio's so-called "retraction" statutes because Smith has never complied with those statutes.**

**A.   Smith relies on one of Ohio's so-called "retraction" statutes to justify an order compelling the Register to publish a retraction or correction.**

Smith demands an order compelling the Register to publish a retraction or a correction of the contested article. He relies on R.C. 2739.14, one of a series of interrelated Ohio laws that, together, address demands that newspapers publish corrections of previously published false statements. R.C. 2739.13 thru R.C. 2739.16. (Memor. re amended mot. for prelim. inj. at 5, 8, 9, doc # 6.)

The statute places no limit on how much time can elapse between the date that a newspaper published a claimed falsehood and the date that an aggrieved person demands a correction. Although nearly a year has passed since the Register published the contested article, Smith argues that the equities favor enjoining the Register.

He argues that he is merely asking that the Register "be compelled to do what is already expressly required under R.C. § 2739.14 – retract or correct the defamatory article." (Memor. re amended mot. for prelim. inj. at 9, doc # 6.)

Smith predicts that his "success . . . is not simply likely, it is all but certain." (Memor. re amended mot. for prelim. inj. at 9, doc # 6.)

Smith is mistaken. Reading the other statutes that interrelate with R.C. 2739.14 reveals that Jared Davis never complied with the statute when Davis demanded a correction or retraction allegedly on Smith's behalf.

**B.  Ohio's "retraction" statutes impose no duty upon newspapers where the aggrieved person has not proffered a sworn statement comprising the words that the newspaper is supposed to publish.**

R.C. 2739.14 says that whenever "demand has been made for the publication of statements or articles under section _2739.13_ of the Revised Code, the newspaper company shall print and circulate the same . . . within 48 hours following the receipt of such statement or article." (Underscore and italics added.)

So R.C. 2739.14 requires a newspaper to publish a statement that complies with R.C. 2739.13. Under R.C. 2739.13, the newspaper's duty is limited to publishing a "statement or article" that sets forth "the truth," which the aggrieved person must provide in writing to the newspaper.

The statute following R.C. 2739.14—R.C. 2739.15—says that the aggrieved person's proffered statement of "the truth" must be under oath. R.C. 2739.15 says:  the statement "shall be sworn to by the person offering the statement or article for publication" with a "certificate of the notary or other official showing that the statement or article was so made under oath."

The statutes impose no duty upon a newspaper to publish anything unless the aggrieved person provides a sworn correction to the newspaper setting forth the truth. Driscoll v. Block, 3 Ohio App.2d 351, 368-369, 210 N.E.2d 899, 910 (Lucas App. 1965).

**C.  Neither Smith nor Jared Davis has supplied a sworn statement to the newspaper.**

Smith has neither alleged nor produced any evidence that he complied with R.C. 2739.14 and its companion laws. He does not claim that he provided the Register with a sworn correction setting forth the truth, nor has he submitted a copy of any such sworn

13

correction. R.C. 2739.14 and its companion laws, therefore, provide no support for Smith's demand that this Court compel the Register to publish a correction or retraction.

Moreover, the "retraction" statutes don't authorize an injunction to enforce their terms. The aggrieved person's sole remedy under those statutes is to demand that the county prosecutor seek a penal fine against a newspaper that doesn't publish a proffered sworn statement setting forth the truth. R.C. 2739.16(B).

This Court, therefore, should deny Smith's demand that this Court enforce R.C. 2739.14 against the Register.

**3.      This Court should deny Smith's motion to compel the Register to publish a retraction or correction on the separate and independent ground that Smith hasn't satisfied the heavy burden that the First Amendment imposes.**

   **A.   The First Amendment imposes a heavy burden upon those who seek to compel the press and the public to make statements about matters of public concern with which they may not agree.**

The First Amendment "prohibits the government from telling people what they must say." Agency for Internat'l Develop. v. Alliance for Open Soc'ty Internat'l, Inc., ___ U.S. ___, 133 S.Ct. 2321, 2327 (2013) (citation and quotations marks omitted).

The term "freedom of speech" necessarily comprises "the decision of both what to say and what not to say." Riley v. Nat'l Fed. of the Blind of No. Carolina, Inc., 487 U.S. 781, 796-797 (1988).

The First Amendment protects against laws that compel members of the public and press to express either an opinion or a statement of fact with which they disagree, or that they don't sincerely endorse. See Riley, 487 U.S. at 797-798; Pacific Gas & Elec. Co. v. PUC of Calif., 475 U.S. 1, 10, 11 n.7, 14, 15, 16 & n.12, 17, 18 (1986) (plurality op.).

"Compelling editors or publishers to publish that which 'reason' tells them should not be published" violates the First Amendment. Miami Herald Pub. Co. v. Tornillo, 418 U.S. 241, 255 (1974).

In Tornillo, the United States Supreme Court unanimously invalidated a Florida law that required newspapers to publish a political candidate's reply to an article that "assails" the official record or personal character of the candidate. The law required the newspaper to publish the reply in as conspicuous a place and in the same kind of type as the article that assailed the candidate. Failure to comply was a first-degree misdemeanor. 418 U.S. at 244 & n.2.

The Court invalidated the law on its face for two independent reasons. First, a newspaper's publishing of particular content—assailing a candidate—triggered the law's requirement that the newspaper publish the reply. That meant that the law burdened the newspaper because of the content of a message that the newspaper initially chose to publish. 418 U.S. at 256.

Second, the law interfered too much with the newspaper's "editorial control and judgment" about which content should appear in the newspaper. 418 U.S. at 258. "Liberty of the press is in peril as soon as the government tries to compel what is to go into a newspaper." 418 U.S. at 258 n.24 (quotation marks and citation omitted).

Government strikes at the core of "freedom of the press" if it can "insinuate itself into the editorial rooms of this Nation's press." Tornillo, 418 U.S. at 259 (White, J. concurring).

Laws and public officials "may not dictate what the press is to print," so "prior compulsion by government in matters going to the very nerve center of a newspaper—the decision as to what copy will or will not be included in any given edition—collides with the First Amendment." <u>Tornillo</u>, 418 U.S. at 262, 261 (White, J. concurring).

After <u>Tornillo</u>, the Court explained further that the First Amendment blocks laws that require a publisher to provide a forum for others to express views about matters of public concern that are not the publisher's own views. <u>Pacific Gas & Elec. Co. v. PUC of Calif.</u>, 475 U.S. at 9 (plurality op.).

Where the content of a newspaper's chosen speech triggers a legal mandate compelling the newspaper to publish a message whose content it would not express or circulate voluntarily, the law is regulating the content of the press in compound ways. First, it imposes a burden on the publisher solely because of the content of the publisher's initial voluntary message. Second, it requires the publisher to utter a message whose content may be disagreeable or repugnant to the publisher.

Such laws are presumptively invalid as so-called "content-based regulations." <u>E.g.</u>, <u>United States v. Playboy Ent. Group, Inc</u>., 529 U.S. 803, 817 (2000); <u>Turner Brdcsting Sys., Inc. v. FCC,</u> 512 U.S. 662, 653 (1994) (explaining <u>Tornillo</u>).

Content-based regulations cannot survive if they don't surmount "exacting First Amendment scrutiny"; that is, the government may not "dictate the content of speech absent compelling necessity, and then, only by means precisely tailored." <u>Riley</u>, 487 U.S. at 798, 800.

The Court invalidated the right-of-reply law in <u>Tornillo</u> even though the Court recognized Florida's "pervasive and strong interest in preventing and redressing attacks upon reputation." <u>Tornillo</u>, 418 U.S. at 261 (White, J. concurring).

Dismissing with prejudice a litigant's claim to compel the press to publish a retraction is appropriate under Federal Civil Rule 12(b)(6) as failing to state a claim upon which relief can be granted. <u>E.g.</u>, <u>Mazur v. Szporer</u>, No. Civ.A. 03-00042, 2014 WL 1944849 at *8 n.7 (D.D.C. 2004).

**B. Smith has not satisfied his heavy burden to justify a court order compelling the Register to publish a retraction or correction.**

Smith cites no authority in Ohio or elsewhere else that supports the order that he seeks.

The Ohio law that Smith cites—R.C. 2739.14—does not authorize a libel plaintiff to obtain a court order to compel newspapers to publish retractions or corrections. <u>See</u> R.C. 2739.16.

Moreover, several Ohio courts have concluded that R.C. 2793.14 and its sibling laws violate the First Amendment under <u>Tornillo</u>. <u>Dupler v. Mansfield Journal Co., Inc.</u>, No. CA-1367, 1979 WL 209640 at *8-*9 (5th App. 1979), *rev'd on ground that court of appeals unnecessarily adjudicated the law's constitutionality*, 64 Ohio St.2d 116, 125, 413 N.E.2d 1187, 1194 (1980); <u>Beacon Journal Pub. Co. v. Lansdowne</u>, No. CV 83-9-2565, 11 Media L. Rep. 1094 (Summit C.P. 1984) (a copy is **Exhibit 7** accompanying this memor.); <u>Moore v. Dix</u>, No. 87-CI-351 (Wayne C.P. 1988) (a copy is **Exhibit 8** accompanying this memor.).

Here, Smith seeks an order that threatens freedom of the press more centrally than the Florida law did in <u>Tornillo</u>, or than R.C. 2739.14 does in Ohio.

Under Florida's and Ohio's laws, the newspaper's duty was to provide space for a statement in the words and voice of an aggrieved person. Smith, however, asks this Court to order the Register to express the demanded retraction or correction in the Register's own voice—even though the Register believes that the article retrievable on its website does not need to be redacted or corrected.

When vacating a court order that required a litigant to issue a written apology to an opposing party, the Sixth Circuit explained: "Neither the district court nor Woodruff cites to any authority, and we have found none, that would permit a court to order a defendant to speak in a manner that may well contravene the beliefs the defendant holds." Woodruff v. Ohman, 29 Fed.Appx. 337, 346, 339 (6th Cir. 2002); accord Pacific Gas & Elec. Co. v. PUC of Calif., 475 U.S. 1, 10, 11 n.7, 14, 15, 16 & n.12, 17, 18 (1986) (plurality op.).

Smith has failed to surmount the burden of "exacting First Amendment scrutiny" required to justify an order compelling the Register to publish a retraction or correction. See Riley, 487 U.S. at 798. This Court, therefore, should deny Smith's demand for that order.

### Conclusion

Smith is moving this Court to issue two mandatory injunctions against the press for which there appears to be no lasting precedent in this country. The orders that he seeks strike at the heart of the First Amendment. Smith has offered nothing to justify issuing those extraordinary orders. This Court should deny his motion for preliminary injunction.

Respectfully submitted,

/s/ David Marburger
David Marburger (0025747)
MARBURGER LAW LLC
14700 Detroit Avenue—Suite One
St. Charles Court
Cleveland, Ohio 44107
T: 216.930.0500
E: david@marburger-law.com

*Counsel for Defendants Sandusky
Newspapers, Inc., Matt Westerhold, and
Courtney Astolfi*

19

CERTIFICATES

I certify that this memorandum complies with local court rules that limit the length of this memorandum.

I also certify that on this 16 day of July, 2017, I transmitted via the court's electronic delivery service a copy of the foregoing Memorandum of Sandusky Newspapers, Inc. opposing plaintiff Smith's *amended* motion for preliminary injunction to:

John W. Gold (0078414)
John W. Gold, LLC
P.O. Box 804
Brunswick, OH  44212
T: 216.777.1488
jgold@jwg-law.com

*Attorney for Matthew Smith*

Mark D. Landes
Isaac Wiles Burkholder & Teetor
Two Miranova Place – Suite 700
Columbus, OH  43215
T:  614.221.2121
F:  614.365.9516
E:  mlandes@isaacwiles.com

*Attorney for City of Sandusky & John Powell*

/s/ David Marburger (0025747)
Marburger Law LLC
14700 Detroit Avenue, Suite One
Cleveland, OH 44107
T: 216.930.0500
E:  david@marburger-law.com

*Attorney for Sandusky Newspapers, Inc., Matt Westerhold, & Courtney Astolfi*

[Return to brief](#)

Register print article—June 16, 2016

# Man steals $22K from rental business

Matthew Smith, 44, was employee of company, had others cash checks he took

### By COURTNEY ASTOLFI
astolfi@sanduskyregister.com

**SANDUSKY**

An employee of a Sandusky rental company was arrested Tuesday for allegedly stealing $22,000 from the business.

Matthew Smith, 44, of Shiloh, was charged with one fourth-degree felony count of theft.

Smith allegedly orchestrated the theft of $22,000 from Davis & Pinchot Investments over the course of five months this year.

He was employed as a maintenance worker at the company, which owns several rental properties in the city of Sandusky, said Sandusky police Detective John Powell.

Smith allegedly entered a company safe and stole seven checks between January and May, all of which had already been signed



Smith

by the owner in order to pay bills, according to police.

Each check, worth between $2,000 and $4,000, was subsequently cashed.

Police said Smith used two men in order to execute the plot.

"He basically duped a tenant into cashing the checks; he took advantage of him," Powell said. "And that (tenant) was driven to the bank by another subject, who the suspect

later tried to pin it on."

Through their investigation, detectives were able trace the thefts back to Smith, despite him allegedly using the others to cash the checks.

A warrant was issued, and Smith was arrested on it Tuesday afternoon.

When officers questioned him at the Sandusky police station, Smith did not admit to the thefts.

He was taken to the Erie County jail, but posted bond and has since been released.