**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Matthew Smith,                                           Case No. 3:17CV1135

        Plaintiff

        v.                                           **ORDER**

Sandusky Newspapers, Inc., et al.,

        Defendants

This libel case arises out of a newspaper article about plaintiff Matthew Smith's arrest.

In June, 2016, police in Sandusky, Ohio arrested Smith on a charge of felony theft.

The local newspaper, the Sandusky Register, recounted the arrest in article titled "Man steals $22k from rental business." The article reported that Smith allegedly stole checks from his employer, directed someone else to cash them, and obtained the cash. It also included the arresting officer's statement that Smith "basically duped [someone] into cashing checks – he took advantage of him." (Doc. 19 at ¶43).

Prosecutors soon dismissed the charge, and the Register eventually modified the online version of the article to read "Shiloh man charged for $22k theft." In September, 2017 – after Smith filed this lawsuit – the newspaper published an article about the dismissal of charges.

Smith now alleges that the original and modified articles libeled him, the former because it definitively stated he committed a theft and the latter because it did not explain that prosecutors

dismissed the charge. He also brings claims for intentional infliction of emotional distress and injunctive relief.[1]

Jurisdiction is proper under 28 U.S.C. § 1367(a).[2]

Pending is the defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6). (Doc. 24). For the following reasons, I grant the motion.

## Background

I recounted the facts underlying Smith's arrest in my prior order. *See Smith*, *supra*, 2018 WL 1315155 at *1–2. In brief, Smith's employer discovered that someone had improperly cashed seven company checks worth $22,000. Two witnesses – Young and Shipman – pinned the crime on Smith; Sandusky police accepted their claim and arrested Smith. In fact, substantial evidence – ignored without explanation by the arresting officer – suggested Young and Shipman were the likely culprits.

On June 16, 2016, the Register published the "Man steals $22k from rental business" article in the print version of its newspaper and on its website. (Doc. 24–2 at 1). Defendant Courtney Astolfi wrote the article, and defendant Matthew Westerhold edited it. (Doc. 19 at ¶¶40–41).

The article stated that:

---

[1] Smith also sued the City and the arresting office for false arrest in violation of the Fourth Amendment. After I denied the City defendants' motion to dismiss, *Smith v. Sandusky Newspapers, Inc.*, 2018 WL 1315155 (N.D. Ohio), Smith and the City defendants settled. In addition, Smith brought a claim under Ohio's statute obligating newspapers to retract false information, O.R.C. § 2739.13, *et seq.*, but he abandoned that claim in his opposition brief. (Doc. 29 at 1 n.1).

[2] I had federal-question jurisdiction over Smith's Fourth Amendment claim and supplemental jurisdiction over his state-law claims. Although the federal claim is no longer in the case, I have discretion to adjudicate the state-law claims that remain. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). Because those claims are fully briefed, I will decide them. *Musson Theatrical, Inc. v. Fed. Ex. Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996).

An employee of a Sandusky rental company was arrested Tuesday for allegedly stealing $22,000 from the business.

Matthew Smith, 44, of Shiloh, was charged with one fourth-degree felony count of theft.

Smith allegedly orchestrated the theft of $22,000 from Davis & Pinchot Investments over the course of five months this year.

He was employed as a maintenance worker at the company, which owns several rental properties in the city of Sandusky, said Sandusky police Detective John Powell.

Smith allegedly entered a company safe and stole seven checks between January and May, all of which had already been signed by the owner in order to pay bills, according to police.

Each check, worth between $2,000 and $4,000, was subsequently cashed.

Police said Smith used two men in order to execute the plot.

"He basically duped a tenant into cashing the checks; he took advantage of him," Powell said. "And that {tenant} was driven to the bank by another subject, who the suspect later tried to pin it on."

Through their investigation, detectives were able trace [*sic*] the thefts back to Smith, despite him allegedly using the others to cash the checks.

A warrant was issued, and Smith was arrested on it Tuesday afternoon.

When officers questioned him at the Sandusky police station, Smith did not admit to the thefts.

He was taken to the Erie County jail, but posted bond and has since been released.

(Doc. 24–2 at 1) (brackets in original).

Two months after Smith's arrest, prosecutors dismissed the theft charge due to lack of

evidence. (Doc. 19 at ¶46).

3

A DPI manager, Jared Davis, called Astolfi and asked her to redact the article about Smith because "it was untrue and harming [Smith's] and DPI's reputation in the local community." (*Id.* at ¶47). Astolfi allegedly responded that "she was aware of the dismissal and would update the story to reflect that the charges had been dismissed." Instead of doing so, Astolfi caused the newspaper to publish "an identical article" with a revised headline reading "Shiloh man charged for $22k theft." (*Id.* at ¶50).

In December, 2016, Davis followed-up with Astolfi and Westerhold about the promised correction, but neither responded. (*Id.* at ¶¶52–53).

After Smith filed this lawsuit, the Register published an article with the headline "Man says police falsely arrested him." (Doc. 24–4). The article reported that "the Erie County prosecutor dismissed the [theft] charges, but left open the possibility of refiling them. Authorities have not suggested that they will refile any charges." (*Id.*).

### Standard of Review

A complaint must contain a "short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**Discussion**

**A. Libel**

To prevail on a libel claim under Ohio law, the plaintiff must prove five elements: "(1) a false statement of fact was made concerning the plaintiff; (2) the statement was defamatory towards the plaintiff; (3) the statement was written; (4) the statement was published; and (5) in publishing the statement, the defendant acted with the necessary degree of fault." *Gupta v. The Lima News*, 139 Ohio App. 3d 538, 544 (2000).

"It is for the court to decide as a matter of law whether certain statements alleged to be defamatory are actionable or not." *American Chem. Soc'y. v. Leadscope, Inc.*, 133 Ohio St. 3d 366, 389 (2012).

"In determining whether a statement is defamatory as a matter of law, a court must review the totality of the circumstances and by reading the statement in the context of the entire publication to determine whether a reasonable reader would interpret it as defamatory." *Id.* (internal brackets and ellipses omitted).

The Register defendants argue that I should dismiss Smith's libel claim because neither the original nor the modified article is defamatory. (Doc. 24–1 at 13).

Defendants recognize that the headline of the first article was unconditionally false. (*Id.* at 19). But they argue that the article as a whole "exposed the headline as reflecting only the formal police accusation against Smith." (*Id.*). Read in context, defendants contend, the headline merely encapsulated the police charge that Smith committed a theft. Likewise, defendants contend that the arresting officer's statement – that Smith "duped a tenant into cashing the checks" – reflected only

the unadjudicated claim that Smith was guilty, as opposed to a definitive statement of guilt. (*Id.* at 20–21).

Smith responds that the article is actionable because nothing in the body of the article clarifies or "tones down" the defamatory headline accusing him of theft. (Doc. 29 at 6).

He contends that the article is "libel per se because it unambiguously accuses [him] of committing a crime." (*Id.* at 5). And because the body of the article contains "self-serving statements from Detective Powell" that Smith had "duped" accomplices into cashing the checks, the body of the article reinforced the defamatory headline. (*Id.*).

### 1. The Original Article Is Not Libelous

Having considered these arguments and the case law on which the parties rely, I agree with the Register defendants that the original article is not defamatory.

The article's headline, if it stood alone, would be problematic, because it accuses Smith of committing a felony.

But Ohio law requires that I read the headline in the broader context in which it appears. *See American Chem. Soc'y*, *supra*, 133 Ohio St. 3d at 389. As the court explained in *Painter v. E.W. Scripps Co.*, 104 Ohio App. 237, 241 (1957):

> It appears that the plaintiff has chosen to consider the headline separate and apart from the remainder of the article. This may not be done as the headline and news item to which it is attached must be construed together in determining the effect of an article claimed to be defamatory.

Given the context in which the headline appears, a reasonable reader would understand the headline as referring to the unproved, unadjudicated charge that Smith had committed a crime, rather than as a bottom-line, unequivocal conclusion that Smith had, in fact, done so.

For one thing, the article repeatedly used the word "allegedly" to describe Smith's involvement in the thefts.

It states, for example, that police had arrested Smith for "allegedly stealing $22,000." (Doc. 24–1 at 1). The article goes on to say that Smith "allegedly orchestrated the theft" over a five-month period, that he "allegedly entered a company safe" to obtain the checks, and that he "allegedly use[d] . . . others to cash the checks." (*Id.*).

These uses of the term "allegedly" serve to distance Smith from a definitive conclusion that he committed the theft.

For another, the article stated only that police had "arrested" Smith on the theft charge. (*Id.*). Nowhere did the article assert or imply that prosecutors had secured a conviction or otherwise conclusively established Smith's guilt.

Finally, the article explained that Smith did not admit to committing the theft, and it noted that he was not in police custody. (Doc. 24–2 at 1) ("When officers questioned him at the Sandusky police station, Smith did not admit to the thefts. He was taken to the Erie County jail, but posted bond and has since been released.").

Taken together, these statements establish that the overall gist of the article was about the police claim, as yet unestablished and still unproved, that Smith had committed a theft. A reasonable reader would therefore understand the article's headline as an iteration of that claim, notwithstanding the otherwise unconditional assertion that Smith stole "$22k from rental business."

Accordingly, the article is not defamatory, and Smith's libel claim is implausible as a matter of law. *See American Chem. Soc'y*, *supra*, 133 Ohio St. 3d at 390 (internal memorandum to current

members stating that former members stole software code was not defamatory because it simply recounted unproved claim in pending trade-secrets litigation against the former members).

### 2. The Arresting Officer's Statement Does Not Make the Original Article Libelous

The inclusion of Detective Powell's statement that Smith orchestrated the thefts does not change the result. Despite Powell's unconditional language, context again makes clear that his statement was a further iteration of the claim against Smith. Throughout the article, a reasonable reader can see that Powell's assertion represented only an unproved allegation. Nothing in the article references a conviction or an admission of guilt; rather, the article explained that Smith "did not admit" to wrongdoing and noted that he was not in custody. (Doc. 24–2 at 1).

### 3. Failing to Mention the Dismissal Does Not Make the Modified Article Libelous.

Smith also contends that the modified Register article is libelous because it does not mention that prosecutors dismissed the theft charge. (Doc. 29 at 7–9).

This argument lacks merit.

Smith admitted in his complaint that police did, in fact, arrest him for theft. (Doc. 19 at ¶¶). As I have just explained, moreover, the original article is not defamatory. Thus, nothing in the article implies anything false about Martin.

This is so, even though the modified article – which the Register published after the dismissal of charges – remains on the Register's website. After all, the article's account of Smith's arrest and the ensuing criminal charges is as true today as it was at the time of publication.

In a persuasive opinion, the Second Circuit rejected a similar claim in *Martin v. Hearst Corp.*, 777 F.3d 546 (2d Cir. 2015).

There, several newspapers accurately reported that authorities arrested Martin and charged her with drug-related offenses. *Id.* at 548. Prosecutors ultimately filed a nolle prosequi, and Martin asked the newspapers to remove the articles from their websites. *Id.* at 549. They refused. *Id.*

Martin claimed that the continued presence of the articles on the papers' websites, without any information about the dismissal of the charges, amounted to defamation by implication. This was so, she claimed, because "the reports of her arrest . . . only tell part of the story." *Id.* at 552.

The Second Circuit (applying Connecticut law) disagreed. It held that the articles did not imply any fact about Martin that was not true:

> [The articles] simply state that she was arrested and criminally charged, both of which Martin admits are true. Reasonable readers understand that some people who are arrested are guilty and that others are not. Reasonable readers also know that in some cases individuals who are arrested will eventually have charges against them dropped. Reporting Martin's arrest without an update may not be as complete a story as Martin would like, but it implies nothing false about her. Accordingly, we reject Martin's contention that the reports of her arrest are defamatory because they fail to mention that the case against her was eventually nolled.

*See also Bright v. Monroe Cnty. Sheriff's Dep't*, 2008 WL 2401262, *4–5 (E.D. Tenn.) (applying Tennessee law to conclude that newspaper article that accurately reported plaintiff's arrest but did not mention subsequent dismissal of charges was not defamatory).

The same result obtains with Smith: because the modified Register article is true and does not falsely imply anything about him, the article does not support a plausible libel claim.

## B. Intentional Infliction of Emotional Distress

"When a plaintiff bases a claim for intentional infliction of emotional distress of allegedly defamatory statements, dismissal of the defamation claim requires the dismissal of the emotional distress claim." *Prior v. Mukasey*, 2008 WL 5076821, *3 (N.D. Ohio). Here, Smith's emotional-

distress claim depends entirely on his libel claim. (Doc. 19 at ¶¶71–75). Accordingly, because the underlying libel claim is implausible as a matter of law, I will dismiss the emotional-distress claim.

### C. Declaratory and Injunctive Relief

According to Smith, the Register has a "policy and custom . . . to electronically publish articles on its website pertaining to arrests and criminal proceedings that are knowingly misleading and/or untrue[.]" (Doc. 19 at ¶102). He seeks a declaratory judgment that this practice constitutes libel per se and an injunction enjoining this practice in the future.

"When seeking declaratory and injunctive relief, a plaintiff must show actual present harm or a significant possibility of future harm[.]" *Nat'l Rifle Ass'n v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997).

Smith lacks standing to seek equitable and injunctive relief.

First, his libel claim is implausible, so he cannot show the existence of any present harm flowing from the Register's alleged policy of publishing libels.

Second, his complaint does not allege "a real and immediate – as opposed to a merely conjectural – threat of future injury" from the Register's alleged policy. *Mosier v. Kentucky*, 675 F. Supp. 2d 693, 697 (E.D. Ky. 2009). In other words, he has not alleged, let alone plausibly, that the Register is likely to publish a defamatory article about him any time soon.

### D. Claims Against Shipman and Young

Smith also brought slander and civil RICO claims against Shipman and Young, the two men who implicated Smith in the theft. (Doc. 19 at ¶¶83–99).

In an order entered October 10, 2017, I granted Smith's request to extend the time to perfect service on Shipman and Young until December 1, 2017. (Doc. 21 at 1). But the record reflects that

Smith has yet to perfect service on either defendant. Furthermore, Smith has not alerted the court to any extenuating circumstances he encountered while trying to serve Shipman and Young, shown good cause for failing to perfect service by December 1, 2017, or otherwise requested a further extension of time to do so.

Because Smith has failed to perfect service and the time to do so has run, I will dismiss the claims against Shipman and Young without prejudice. *See* Fed. R. Civ. P. 4(m).

**Conclusion**

It is, therefore,

ORDERED THAT:

1. The Register defendants' motion to dismiss (Doc. 24) be, and the same hereby is, granted with prejudice;

2. Plaintiff's motion for judgment on the pleadings against the City of Sandusky and John Powell (Doc. 32) be, and the same hereby is, denied as moot in light of the parties stipulated notice of dismissal (Doc. 38); and

3. Plaintiff's claims against Troy Shipman and Raymond Young be, and the same hereby are, dismissed without prejudice.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge